James K. J. **CHENG**, Plaintiff–Appellant,

v.

**GAF CORPORATION,**
Defendant–Appellee.

No. 1199, Docket 80–7254.

United States Court of Appeals,
Second Circuit.

Argued May 19, 1980.

Decided Aug. 26, 1980.

Jonathan A. Weiss, Legal Services for the Elderly Poor, New York City (Kathleen L. Coles, Legal Services for the Elderly Poor, New York City, of counsel), for plaintiff–appellant.

Robert L. Jauvtis, New York City (Epstein, Becker, Borsody & Green, New York City, of counsel), for defendant–appellee.

Before OAKES and MESKILL, Circuit Judges, and BONSAL, District Judge.*

MESKILL, Circuit Judge:

James K. J. Cheng appeals from an order entered in the United States District Court for the Southern District of New York (Owen, J.) denying his motion to disqualify the law firm representing his opponent, GAF Corporation. Cheng argued below

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

that because one of the attorneys employed by the law firm representing GAF previously had been employed by the legal services office representing Cheng, disqualification was necessary to avoid violations of various Canons of the American Bar Association Code of Professional Responsibility ("ABA Code"). The district court, concluding that disqualification was not warranted, denied Cheng's motion. For the reasons set forth below, we reverse the district court's decision and remand for entry of an order of disqualification.

## BACKGROUND

In 1977, Cheng, represented by Legal Services for the Elderly Poor ("LSEP"), instituted an employment discrimination action against GAF. From the start, GAF has been represented in this litigation by the law firm of Epstein, Becker, Borsody & Green ("Epstein firm"). In October, 1979, while the *Cheng* case was still in the discovery phase, the Epstein firm hired Philip Gassel as an associate in its health law department. From 1974 until his association with the Epstein firm, Gassel had been employed as a senior attorney at LSEP. Although Cheng concedes that while Gassel was employed at LSEP he did not represent Cheng in any litigation, Cheng claims that Gassel did participate in discussions with other members of the staff about the GAF case.

After learning of Gassel's new association, Cheng filed a motion to disqualify the Epstein firm from representing GAF in the instant case. Cheng alleged that the "continued participation of the Epstein firm . . . seriously jeopardizes the integrity of confidences and secrets of [Cheng] which were imparted to Mr. Gassel under the cloak of attorney–client relationship."

Weiss Affidavit at 5. Citing the small size of the LSEP legal staff, which consisted of four to six attorneys working with several part–time students, and noting the frequency of cooperation and consultation among the LSEP attorneys, Cheng claimed that Gassel had actual knowledge of Cheng's confidences and secrets when he joined the Epstein firm. Cheng argued, therefore, that under Canons Four, Five and Nine of the ABA Code,[1] the Epstein firm should be disqualified.

Opposing the disqualification motion, the Epstein firm averred in its affidavits that Gassel had been hired as a health law attorney and had functioned only in that capacity, aside from handling some commercial litigation and miscellaneous matters. The Epstein firm emphasized that Gassel had not worked on the *Cheng* case, had not divulged any confidential information and would not be required to do so in the future. Gassel submitted an affidavit disclaiming any present involvement in the *Cheng* case and urging acceptance of the technique of insulation practiced by the Epstein firm.

■ In his opinion denying the disqualification motion, Judge Owen discussed Gassel's involvement in the *Cheng* case, and expressed the belief that Gassel possessed minimal confidential information, that he had not disclosed the information yet and that the Epstein firm had effectively screened him from the attorneys handling GAF's defense. Stating that the prejudice that would result from requiring GAF to change law firms after extensive discovery and trial preparation would be substantial, Judge Owen concluded that "to order disqualification under these circumstances would not serve any interest which the law recognizes." Because we disagree with Judge Owen's view of the effectiveness of

---

1. The ABA Code consists of Canons which are "axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers." While the Ethical Considerations accompanying each Canon are "aspirational in character," the Disciplinary Rules keyed to each Canon "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Prelimi-

nary Statement, American Bar Association *Code of Professional Responsibility.*

Canon 4 states: "A Lawyer Should Preserve the Confidences and Secrets of a Client." Canon 5 provides: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client" and Canon 9 warns that: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety."

the screening procedures employed by the Epstein firm, we reverse.[2]

## DISCUSSION

It is well settled in this Circuit that a motion to disqualify an attorney is addressed to the discretion of the district court, and a ruling thereon will not be overturned absent a determination of abuse of discretion. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975). *See also Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir.1977); *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977); *W. T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir. 1976). The question raised in this appeal is whether Judge Owen's refusal to disqualify the Epstein firm was such an abuse.

### I. *Disqualification Under Canon 4*

The American Bar Association Code of Professional Responsibility has been recognized in this Circuit as providing appropriate guidelines for proper professional behavior. *Fund of Funds, Ltd. v. Arthur Andersen & Co., supra*, 567 F.2d at 227 n.2; *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 129 n.2 (2d Cir.1976); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976); *Hull v. Celanese Corp., supra*, 513 F.2d at 571 n.12. *Cf. Armstrong v. McAlpin*, 625 F.2d 433, 446 n.26 (2d Cir. 1980) (although ABA committee that drafted Code has indicated rules were intended for use in disciplinary proceedings rather than in disqualification proceedings, Court refers to Code for guidance).

Canon 4 and its Ethical Considerations and Disciplinary Rules provide standards to guide an attorney in preserving the confidences and secrets of a client.[3] Cheng argues vigorously that under these standards Gassel should be disqualified from repre-

---

2. After the filing of our decision in *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir. 1980) (en banc), the Epstein firm submitted a letter brief urging us to dismiss Cheng's appeal. In *Armstrong*, we held that "*henceforth* orders denying disqualification motions will not be appealable." 625 F.2d at 435 (emphasis added). We do not regard that language as precluding us from reaching the merits of the instant appeal.

Some of the considerations which prompted us to reach the merits in the *Armstrong* case counsel us to do so in the instant appeal. *See Armstrong*, 625 F.2d at 441–42. Since this appeal was filed, briefed, argued, and considered prior to the filing of the *Armstrong* decision, our disposition of the appeal on the merits will neither crowd the appellate docket nor delay the litigation below. On the other hand, for us to dismiss the appeal at this stage would entail a needless waste of both judicial and private resources. Cheng's appeal was filed in full compliance and proper reliance on the pre–*Armstrong* law of this Circuit. The evils the *Armstrong* decision is intended to avoid have already occurred in the instant case and cannot be undone by dismissal at this stage of the proceedings. Consequently, we can see no justification for wasting the time and resources of the parties, the trial court and this Court by requiring Cheng to re–appeal at a later date. Nor do we view *Armstrong* as intending such a result.

3. *See* Canon 4, quoted in note 1, *supra*. The only Disciplinary Rule keyed to Canon 4 provides:

DR 4–101 Preservation of Confidences and Secrets of a Client.

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:
(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.
(3) The intention of his client to commit a crime and the information necessary to prevent the crime.
(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the

senting GAF in the present action. Although Gassel is not actively involved in GAF's defense, his disqualification under Canon 4 would implicate the sweeping prohibition of representation by a tainted attorney's co–workers contained in Canon 5. Disciplinary Rule 5–105(D) provides: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." Although the district court below did not decide whether Gassel himself had to be disqualified under Canon 4, we must address this question briefly as it bears upon our analysis of Disciplinary Rule 5–105(D).

Determination of a violation of Canon 4 sufficient to disqualify an attorney traditionally has been based on a finding of concurrent or successive representation in the same or substantially related matters.

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.

*T. C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953). It is well established that a court may not inquire into the nature of the confidences alleged to have been revealed to the tainted attorney. To require proof of access to privileged information would "put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether." *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 740 (2d Cir.1978). *See also Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* 567 F.2d at 235–36; *United States v. Standard Oil Co.,* 136 F.Supp. 345, 354 (S.D.N.Y.1955) (Kaufman, *J.*) ("complainant need only show *access* to such *substantially related* material and the inference that defendant received these confidences will follow.") (emphasis in original). In the instant case, there is no dispute that the matters involved in Gassel's former association with Cheng are substantially related to his present association; the suit and the parties have remained the same throughout the proceedings. The only changing factor has been Gassel, who has moved from the plaintiff's firm to the defendant's firm, thus becoming subject to a disqualification challenge.[4]

In *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir.1975) (overruled on other grounds in *Armstrong v. McAlpin, supra*), we recognized that although there may be an inference that an attorney has knowledge of the confidences and secrets of his firm's clients, that inference is rebuttable. We also noted an earlier caution that the standard of proof to rebut this presumption should not

---

information allowed by DR 4–101(C) through an employee.

4. In our recent decision in *Armstrong, supra,* we noted that

 "with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) *where the attorney is at least potentially in a position to*

 *use privileged information concerning the other side through prior representation,* for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage . . . ."

 625 F.2d at 444, *quoting Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979) (footnote and citations omitted) (emphasis added). In the instant case, because the Epstein firm is defending the still pending suit brought on Cheng's behalf by LSEP, Gassel is potentially in a position to use Cheng's confidential information to Cheng's disadvantage.

become "unattainably high." *Id.* at 754, quoting *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures,* 224 F.2d 824, 827 (2d Cir.1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956). *See also Government of India v. Cook Industries, Inc., supra,* 569 F.2d at 741 (Mansfield, *J.,* concurring). After considering the affidavits submitted by all parties in the instant case, including Gassel, Judge Owen assumed for the purposes of the motion that Gassel had been privy to some confidential disclosures, but he admitted that the extent of Gassel's exposure to the *Cheng* case through informal discussions or general strategy conferences had not been conclusively determined. Thus, the district court refrained from deciding whether Gassel had rebutted the presumption that he had obtained impermissible knowledge of Cheng's confidences and secrets. If we accept Judge Owen's assumption that Gassel was privy to those confidences, however, it is clear that Gassel would have to be disqualified under Canon 4 from representing Cheng's adversary in the identical proceedings.[5] *Government of India v. Cook Industries, Inc., supra,* 569 F.2d 737; *Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* 567 F.2d at 225; *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973).

Applying Disciplinary Rule 5–105(D), it appears that the Epstein firm should be disqualified as well. Judge Owen did not reach this conclusion, choosing instead to find that regardless of the extent of Gassel's knowledge, Cheng was adequately protected because Gassel had not yet divulged any confidences and was not inclined to do so in the future. We have considered the affidavits submitted to the district court and we conclude that there is ample support for Judge Owen's assumption that Gassel had been privy to Cheng's confidences, thus we find that under Canon 4 he would be disqualified from representing the defendant in the *Cheng* case. We next address Canon 5 and the screening procedures instituted to avoid disqualification of the Epstein firm.

## II. *The "Chinese Wall" Defense*

■ Anticipating difficulties caused by a strict application of Disciplinary Rule 5–105(D), law firms have employed various methods of screening a possibly tainted attorney from the rest of the firm's involvement in a particular case. The Epstein firm in the instant case cites the division of duties within its firm to demonstrate the height and thickness of the "Chinese Wall" they have constructed between Gassel and the *Cheng* case. They note in their affidavits that Gassel has been assigned to the health law division of their firm while GAF's defense is being handled by its labor division. The affidavits also aver that Gassel has not worked on the *Cheng* case, disclosed Cheng's confidences nor discussed the merits of the case while at the Epstein firm, and that the firm will not permit him to have any substantive involvement in the *Cheng* defense. Judge Owen accepted the Epstein firm's position, finding that the "risk of disclosure of confidential information is negligible." We take a different view of the potential for disclosure, keeping in mind that, as Judge Owen noted, one of the purposes of disqualification is "to guard against the danger of inadvertent use of confidential information," *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp., supra,* 518 F.2d at 754, (quoting *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir.1975)).

---

**5.** The following allegations appeared in the affidavits submitted on Cheng's behalf: Gassel was personally introduced to Cheng; he "was present at and participated in several discussions with other LSEP attorneys and law students regarding the conduct, strategy, and facts of Mr. Cheng's case;" he discussed Cheng's communications with the representing attorney. Weiss affidavit at 4. These allegations were not challenged or refuted in any of the Epstein firm's affidavits; indeed, they appear also in the Epstein firm's brief on appeal. GAF brief at 3. It appears from the stipulated record on appeal that no additional evidence was before Judge Owen. Because we find that the affidavits demonstrate that Gassel did have knowledge of Cheng's confidences and secrets,

Although Gassel may not be personally involved in the *Cheng* defense, he is a member of a relatively small firm.[6] The matter involved in his prior exposure to Cheng while at LSEP is still being actively pursued by attorneys for GAF at the Epstein firm. Despite the Epstein firm's protestations, it is unclear to us how disclosures, admittedly inadvertent, can be prevented throughout the course of this representation. Unlike many disqualification motions that appear before this Court, here there exists a continuing danger that Gassel may unintentionally transmit information he gained through his prior association with Cheng during his day–to–day contact with defense counsel. *Compare NCK Organization, Ltd. v. Bregman, supra,* 542 F.2d 128, and *Hull v. Celanese Corp., supra,* 513 F.2d 568. *See also Government of India v. Cook Industries, Inc., supra,* 569 F.2d 737. If after considering all of the precautions taken by the Epstein firm this Court still harbors doubts as to the sufficiency of these preventive measures, then we can hardly expect Cheng or members of the public to consider the attempted quarantine to be impenetrable. Although we do not ques-

tion Mr. Gassel's integrity or his sincere efforts to disassociate himself from the *Cheng* case, we are not satisfied that under the facts of this case the screening will be effective, thus we look to Disciplinary Rule 5–105(D) and order the district court to disqualify the Epstein firm.[7] *See Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1387, and cases cited therein. *See also Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* 567 F.2d at 229 n.10.

### III. *Appearance of Improperiety*

■ Although we rest our holding on the clear direction in Disciplinary Rule 5–105(D), the result is compelled also by Canon 9's warning that "A Lawyer Should Avoid Even the Appearance of Professional Improperiety." In *Armstrong v. McAlpin, supra,* 625 F.2d 433, we cited the restrained approach to disqualification that had been adopted in *Board of Education v. Nyquist, supra,* 590 F.2d 1241, noting that where there is no danger that the underlying trial will be tainted, appearances of improperiety alone are insufficient to justify disqualification. Judge Owen, in his opinion below,

---

we accept Judge Owen's assumption for purposes of this appeal.

6. The Epstein firm's affidavit states that a total of 35 attorneys are employed in their New York and Washington, D.C. offices, with approximately 60 percent of the total located in the New York office where Gassel is an associate. Becker affidavit at 1.

7. Although the Epstein firm urges that the result in this case should be controlled by our recent decision in *Armstrong, supra,* we find many factors distinguishing the two situations. In *Armstrong,* a former government attorney was concededly disqualified from private employment in a matter in which he had had substantial responsibility while employed by the Securities and Exchange Commission. This Court held that the attorney's law firm could continue representation where the tainted attorney was screened effectively.

In the instant case the tainted attorney is disqualified under Canon 4's commendable intent to protect a client's confidences and secrets, while in *Armstrong,* the attorney was disqualified under Disciplinary Rule 9–101(B), which forbids a lawyer to accept private employment in a matter in which he had substantial responsibility while a public employee. In *Armstrong* we noted the absence of a threat of

taint of the underlying trial, and cited several policy reasons for approving the screening employed there. Primary among these reasons was a recognition that to disallow screening in all cases involving government attorneys might hamper the "government's efforts to hire qualified attorneys." 625 F.2d at 443. In the instant case, by contrast, there *does* exist a threat of taint of the underlying trial, but there are no public policy reasons against disqualification as compelling as those involved in *Armstrong.* In addition, the tainted attorney's former employer in *Armstrong* agreed to the representation as long as proper screening techniques were used; here, Cheng and LSEP, Gassel's former employer, have objected to the representation since the Epstein firm hired Gassel. Finally, although the prejudice to the client separated from his attorney is also a factor, we must note that the prejudice to GAF caused by changing firms at this point is much less than the hardship that would have resulted from disqualification in *Armstrong.* "[S]eparating the receiver from his counsel at this late date will seriously delay and impede, and perhaps altogether thwart his attempt to obtain redress for defendants' alleged frauds." *Id.* at 445.

also cited *Nyquist's* recommendation of restraint and concluded that it was "virtually assured" that the underlying trial in *Cheng* would not be tainted. We disagree. Such assurances would not seem to be possible in a situation such as this where Gassel is "potentially in a position to use privileged information," *Nyquist*, 590 F.2d at 1246, which he gained through his prior contact with the *Cheng* case. It is possible that, despite attempts by the Epstein firm to screen Gassel, the underlying trial could be tainted through GAF's inadvertent use of the unfair advantage it has over Cheng. This case presents, therefore, both the danger of tainting the underlying trial and the unacceptable appearance of impropriety condemned in Canon 9. *Cf. Emle Industries, Inc. v. Patentex, Inc., supra*, 478 F.2d at 565 (where public confidence in Bar would be undermined, "even an appearance of impropriety requires prompt remedial action by the court.").

Thus, it is clear that under Canon 9 as well as Canons 4 and 5, Gassel and the Epstein firm must be disqualified. Judge Owen's decision to the contrary was an abuse of discretion. Moreover, if there were any doubt as to the propriety of our action, we would resolve it in favor of disqualification. *Hull v. Celanese Corp., supra*, 513 F.2d at 571; *accord, Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp., supra*, 518 F.2d at 757.

The order of the district court is reversed and the case is remanded for entry of an order of disqualification.