**Edward MOORE, et al., Plaintiff,**

**v.**

**Joseph MARGIOTTA, et al., Defendants.**

**No. CV 83–2036.**

United States District Court,
E.D. New York.

March 8, 1984.

Moore, Berson, Lefflander & Mewhinney, New York City, for plaintiffs.

Faden & Goldmacher, Westbury, N.Y., for defendant Cahn.

D'Amato & Lynch by John J. Cullen, New York City, for defendant Dowler.

Mudge, Rose, Guthrie, Alexander & Ferdon by Jed Rakoff, Paul G. Burns and Ellen Cohn, New York City, for defendants Williams and Richard B. Williams & Son, Inc.

Frank X. Kilgannon, Mineola, N.Y., for defendants Charles Langdon, Inc. and Charles H. Langdon.

Glover & Glover by William T. Glover, Valley Stream, N.Y., for defendant Henry G. Wood, Inc.

Joseph V. Schettino, Valley Stream, N.Y., for defendant Jack Rose Ins. Agency.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This civil action was commenced in April 1983 pursuant to the Organized Crime Control Act of 1970, 18 U.S.C. Section 1961 *et seq.*, commonly known as RICO. It stems from the earlier prosecution and conviction of Joseph Margiotta and others for a "kickback" scheme involving the award of Nassau County insurance policies.

Defendants Robert E. Dowler and Richard A. Williams, and Richard B. Williams & Sons, Inc. now move this Court[1] for an order disqualifying plaintiffs' counsel, the firm of Moore, Berson, Lifflander & Mewhinney of Garden City, New York (Moore Berson). Defendants Neil Cahn, Henry Wood, Jack Rose Insurance and Charles Langdon join in the motion to disqualify. Movants allege that counsel for plaintiffs have violated Canons 4, 5 and 9 of the ABA Code of Professional Responsibility in their representation of the plaintiffs. They assert two bases for disqualification. First, they contend that Moore Berson's representation of plaintiffs conflicts with earlier representation by one firm member of a defendant in this case. Second, defendants contend that the joint representation of two classes of plaintiffs is conflicting and thus violates the Code of Professional Responsibility.

### FACTS

At the center of the first controversy is attorney James A. Gallagher, Jr., now of the firm of Moore, Berson, Lifflander & Mewhinney. From May 15, 1979 to September 30, 1981 he was a member of Doran, Buckley, Kremer, O'Reilly & Pieper (Doran Buckley) located at 1505 Kellum Place, Mineola, New York. That firm is now defunct. The law firm was never a partnership, rather it was a "group of solo practitioners associated with each other for the purpose of sharing legal work and costs." (Affidavit of James Gallagher). Each so-called partner handled his caseload

[1]. Judge Leonard D. Wexler presiding *pro hac vice* in the temporary absence of The Honorable Jacob Mishler from the Eastern District of New York.

separately and independently and client files were not commingled. Nevertheless, it is undisputed that Doran Buckley had a firm letterhead, shared a secretarial-clerical staff, denominated members as either "partners" or "associates," shared the services of the associates among the partners, had a common but not integrated filing area, and generally held themselves out as a law firm to the public.

The Court will not quibble about the technical requirements of a law partnership. Doran Buckley held itself out as a law firm and centralized its office operations. How it held assets and distributed costs and income is of little importance to the public or Court in this instance. For the purposes of this controversy the Court deems Doran Buckley to have been a law firm.

It is undisputed that in 1976 Mr. Dowler was first represented in a business matter by the firm of Doran, Colleran, O'Hara, Pollio and Dunne. That firm was dissolved and Mr. Dowler retained one of its successors, namely Doran Buckley, to continue handling his affairs. In early 1980 Mr. Dowler consulted James Marsh, a member of Doran Buckley, several times concerning his appearance before the Grand Jury investigating Joseph Margiotta. Although Mr. Dowler retained another attorney to represent him for the Grand Jury proceedings, he imparted confidential information concerning that matter to James Marsh as his attorney. (Affidavit of Robert Dowler and Affidavit of James Marsh).

There is no assertion that Mr. Gallagher was a direct recipient of any confidences nor that there were any discussions of the Dowler-Margiotta matter to which Mr. Gallagher was party. It is contended that as a member of Doran Buckley he had free access to Mr. Dowler's client files and papers and could have received confidential information regarding Mr. Dowler. Mr. Gallagher affirms that in fact he did not read any of the Dowler files in the office or otherwise receive confidential information about any of Mr. Dowler's matters. Finally, he declares that Michael T. Sullivan is the partner representing plaintiffs in this case and while he has assisted Mr. Sullivan he will cease to do any work on the case should the Court so order. Defendants insist, however, that since the matters are identical, the opportunity for access to Dowler's attorney-client confidences so clear, and the appearance of impropriety so strong, the conflict in Mr. Gallagher's representation of the plaintiffs requires this Court to disqualify his new law firm.

As to the second grounds for disqualification, defendants contend that plaintiffs in this matter are two separate classes with distinct and conflicting interests in any funds awarded, should judgment be entered against defendants. Specifically, the firm of Moore Berson represents the class of Nassau county residents and taxpayers seeking damages, recission of insurance contracts, and recovery of premium and commission payments, and the class of local insurance brokers seeking damages arising from their exclusion from the county's insurance contract business. Both groups claim violation of 18 U.S.C. Section 1962 on the part of defendants and seek disgorgement of approximately $1,500,000.00 paid by the county in commissions and premiums as unlawful gain to the defendants and damages as to plaintiffs.

## DISCUSSION

The Court turns first to the issue of James Gallagher's sequential conflicting representation of clients. According to the defendants, Mr. Gallagher, and therefore his present law firm, is in violation of Canons 4 and 9 of the Code of Professional Responsibility. Canon 4 provides that a "lawyer should preserve the confidences and secrets of a client." Canon 9 provides that a "lawyer should avoid even the appearance of professional impropriety."

█ It is axiomatic that the knowledge of one lawyer in a firm is attributable to every member of the firm. Therefore, if Mr. Gallagher is the recipient of Dowler's attorney-client confidences, the entire firm of Moore Berson are also recipients. The Second Circuit, however, has restricted the

instances when, in situations like this, the knowledge of one or more members of a firm will be attributed to and deemed carried away with a former member of the firm.

■ In addressing the danger of misuse or violation of a first client's confidences in the representation of a second client the Court initially must find a substantial relation between the interests successively represented. *Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir.1980). In this case, there is obviously complete identity in the substance of the representation. This being established, there is an inference that the attorney has carried away knowledge of the first client's confidences. The Second Circuit, however, has held this to be a rebuttable inference. *Cheng v. GAF Corp.*, 631 F.2d at 1056; *Silver Chrysler Plymouth Inc. v. Chrysler Motor Corp.*, 518 F.2d 751, 754 (2d Cir.1975). Here, it is undisputed that Mr. Gallagher had mere opportunity for access to knowledge if he chose to rifle Mr. Marsh's segregated files. However, it has been established that there is no basis in fact for attributing knowledge of Dowler's confidences or affairs to Mr. Gallagher. Mere access to documents is not sufficient basis for inferring an attorney-client relationship or knowledge of confidential information. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 793 (2d Cir. 1983). This Court will not infer an attorney-client relationship or confidential knowledge on the basis of an *opportunity* for access to documents alone.

Defendants next contend that even if there is no actual knowledge of confidential information of Mr. Gallagher's part, the appearance of impropriety in violation of Canon 9 should prompt this Court to disqualify Moore Berson. This controversy primarily concerns small law firms in small suburban communities in what has been a highly publicized case. While this Court finds the presence of Mr. Gallagher in firms associated with opposing sides in this controversy a less than salutary circumstance for the image of legal practice in this community, it is persuaded that a vague appearance of impropriety alone will not suffice in this Circuit to disqualify Mr. Gallagher's new firm. *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d at 757. Nevertheless, were the Court not to find other grounds for disqualifying Moore Berson it would order Mr. Gallagher to scrupulously avoid all further involvement in this case in the interest of maintaining an image of propriety.

■ The Court next turns to the issues presented by counsel's representation of two classes of plaintiffs with apparently conflicting claims. Under 18 U.S.C. Section 1964(c) a plaintiff successfully suing civilly recovers threefold the amount of damages sustained as a result of a defendant's activities in violation of 18 U.S.C. Section 1962. Plaintiff taxpayer-residents sue for damages based on insurance premiums and commissions received in the kickback scheme. Plaintiff insurance brokers claim the same monies as damages from being wrongly debarred for receiving that insurance business. It would be difficult to award the whole sum to both classes of plaintiffs. Clearly, at some point the two theories of recovery will cause an active conflict of interests between the two classes of plaintiffs.

According to the defendants, this conflict violates Canon 5, which states that a "lawyer should exercise independent professional judgment on behalf of a client." Defendants also allege a violation of the Canon 4 command against disclosure of client confidences and secrets. Counsel for plaintiffs simply asserts that there is a difference in the funds that the two classes seek to recover. Counsel has not, however, managed to elucidate exactly what that difference is. They ask that if the Court finds a conflict in representation that they be allowed to continue to represent the taxpayer-resident class and discontinue representation of the insurance broker class.

The Court finds guidance on the issue of Canon 4 confidentially between dual clients in a recent opinion issued by the Committee on Professional Ethics of the New York State Bar Association. Opinion No. 555,

N.Y.L.J., Feb. 24, 1984, at 4, col. 1. In that opinion the Committee addressed the question of whether a confidential communication to counsel from one of two jointly represented partnership clients can be imparted to the other client, to whom that information has importance. The Committee decided that counsel is neither required nor permitted to divulge the one client's confidences to the other when the confiding client requests strict confidentiality against the other. The Committee further declared that counsel should cease representation of both clients in partnership matters.

On its face the representation of the two classes of plaintiffs raises the spectre of conflicts under Canon 4. At any point one group may confide information in counsel and ask that it be kept from the other group, presenting exactly the problem addressed by the Ethics Committee in Opinion No. 555, if it has not already happened.

The Canon 5 imperative to exercise as to *each* client independent and professional judgment is also clearly implicated by joint representation. Again, at any time consideration of the interests of one plaintiff class may be clouded by consideration of the interests of the other class. The interests need not conflict directly, but the mere fact of adjusting or compromising legal tactics or arguments to accommodate both classes of plaintiffs obviously impairs counsel's use of independent professional judgment as to each class.

Concomitantly, representation under Canon 7, which commands that a "lawyer should represent a client zealously within the bounds of the law," is equally impaired by joint representation of two classes of plaintiffs with conflicting theories of recovery. For just as independent judgment may be tempered by reconciling the interests of the two classes, so may the zealous prosecution of each group's interests be compromised. One need not have the direct conflict between theories of recovery apparently present here. The mere risk of compromising professional judgment, tactics, and pursuit of the two group's interests is enough to cast the joint representation in a dubious light.

Finally, this joint representation of the two plaintiff classes may cause counsel to violate one Canon in order to uphold another. For example, preserving the confidences of one plaintiff class may impair the exercise of independent judgment in the interests of the other class. Conversely, exercising independent judgment or zealous representation for one class of plaintiffs may cause counsel to compromise confidentiality as to the other. Hence, joint representation in this matter not only impairs representation as to each class under the Canons, but places counsel in the position of picking and choosing which Canon to uphold. In either case, counsel can end up in the clichéd situation of robbing Peter to pay Paul.

## CONCLUSION

The conflict in the joint representation both actual and potential is so great that this Court is compelled to disqualify plaintiffs' counsel, Moore, Berson, Lefflander and Mewhinney. Both plaintiffs are laying claim to the same monies on different theories of damages. Furthermore, no showing has been made that this conflict in recoveries is illusory, nor that the two classes of plaintiffs have even been informed of the possible conflict in their interests and consented to joint representation. The Court concludes that the knowledge by now acquired by Moore Berson from both plaintiff classes disqualifies them from representation of either class, as it impairs their compliance with Canon 4. If allowed to continue representing one class Moore Berson will have attained a real advantage over any co-counsel for the declined plaintiff class by its previous representation. That intimate knowledge of co-plaintiff's case even if not a certain violation of Canon 4 confidentiality, carries a mantle of impropriety that is unacceptable.

In view of the foregoing, plaintiffs' counsel Moore, Berson, Lefflander and Mewhinney is disqualified from further representa-

tion of both classes of plaintiff, and it is hereby

ORDERED, that Moore, Berson, Lefflander and Mewhinney cease to represent all plaintiffs, and it is further

ORDERED, that plaintiffs secure other independent representation and that the representation be separate as to the tax-payer-resident class and the insurance broker class, and it is further

ORDERED, that Moore, Berson, Lefflander and Mewhinney convey all papers, materials, and files concerning plaintiffs in their possession to such new counsel as plaintiffs shall secure, and it is further

ORDERED, that all proceedings in this matter shall be stayed for thirty days or until both plaintiffs secure new counsel, whichever is shorter, or until such time as the Honorable Jacob Mishler shall establish. It is

SO ORDERED.