**Allan BAIRD and Lenore Baird, Plaintiffs,**

v.

**HILTON HOTEL CORPORATION and Palmer House Company, Defendants.**

**No. CV–88–1017 (CBA).**

United States District Court, E.D. New York.

Feb. 28, 1991.

Laurie Newman, Katz, Katz & Bleifer, New York City, for plaintiffs.

Glen Pewarski, Kanterman, Taub & Breitner, New York City, for defendants.

## MEMORANDUM AND ORDER

AMON, District Judge.

## INTRODUCTION

By Order to Show Cause dated December 14, 1990, defendants moved for an or-der disqualifying plaintiffs' counsel on the ground that an attorney who was previously associated with defendants' former counsel Bivona & Cohen (the Bivona firm) and who represented the defendants in the discovery phase of this case, is now employed by plaintiffs' law firm, Katz, Katz & Bleifer, P.C. (the Katz firm).

For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The facts surrounding this motion generally are not disputed. Candice Pluchino personally participated in the defense of this matter on behalf of defendants while employed by the Bivona firm, including the drafting of discovery responses and appearances at the depositions of both plaintiff Allan Baird and an employee of defendant Hilton Hotel Corporation on November 11, 1988 and January 25, 1989, respectively. Ms. Pluchino was subsequently employed by the Katz firm in September 1989. The Katz firm was a seven-member law firm when Ms. Pluchino was hired and presently consists of nine attorneys.

On April 30, 1990, defendants' present attorneys, Kanterman, Taub & Breitner (the Kanterman firm) were substituted for the Bivona firm.

On December 12, 1990, five days before the jury was to be selected for trial, Glen Pewarski of the Kanterman firm noticed Ms. Pluchino's name on the letterhead of the Katz firm and connected her name with the name appearing on the deposition transcripts. On December 14, 1990, defendants moved by order to show cause to disqualify plaintiffs' counsel.

On December 17, 1990, the court heard argument on the motion and testimony from Ms. Pluchino. Ms. Pluchino conceded her direct involvement in the case on behalf of the defendants while at the Bivona firm. She testified, however, that she has had no dealings with the instant action while at the Katz firm. She stated that the lawyers at her firm who were representing plaintiffs were aware of her previous representation of defendants and did not discuss the case with her. She additionally noted that

precautions had been taken to insure that she had no access to files and correspondence pertaining to the case. Ms. Pluchino testified that she believed that the Bivona firm had been aware of her employment by plaintiffs' firm since approximately November 1989 and had never objected.

Based on Ms. Pluchino's testimony and plaintiffs' argument that disqualification was barred by laches, I directed defendants to contact the Bivona firm concerning its knowledge of Ms. Pluchino's change of firms. Although the attorney who supervised the case at the Bivona firm declined to supply defendants with an affidavit, he did inform defendants that he learned of Ms. Pluchino's employment with the Katz firm sometime after she left the Bivona firm in August 1989. He further informed defendants that the Katz firm never formally notified him of Ms. Pluchino's employment at that firm.

## DISCUSSION

It is not disputed that Ms. Pluchino is disqualified from representing plaintiffs in this case. Defendants were clients of Ms. Pluchino when she was employed at the Bivona firm, the subject matter of the prior representation and the issues in the present lawsuit are identical, and Ms. Pluchino, having taken key depositions in this case while at the Bivona firm, was likely to have had access to relevant privileged information while representing defendants. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *United States Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985).

What is disputed is (1) whether Ms. Pluchino's disqualification requires disqualification of the entire Katz firm and (2) if so, whether defendants' motion to disqualify is barred by laches.

### A. *Disqualification of the Katz Firm*

█ Although the rules of professional conduct are not dispositive, courts should look to these rules for guidance in determining disqualification motions. *E.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 n. 2 (2d Cir.1977). Disciplinary Rule (DR) 5–105(D) provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.

Despite the clear direction of DR 5–105(D) that an attorney's disqualification bars the entire firm, plaintiffs contend that the "Chinese Wall" that is in place at the Katz firm to screen Ms. Pluchino from information about the case is sufficient to preclude the disqualification of the firm.

In *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir.1980) *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981),[1] the court addressed the effectiveness of the "Chinese Wall" in place in that case and found it deficient. The plaintiff in *Cheng* moved to disqualify defendants' law firm because one of the firm's attorneys had previously worked at the same Legal Services Office representing the plaintiff and had discussed plaintiff's case with the staff members directly responsible for the matter. In opposing the motion, the defendants explained that the attorney had been assigned to a division in defendant's firm different from the one handling the litigation, that he had neither worked on nor

---

**1.** Although the Supreme Court vacated the Second Circuit's decision in *Cheng,* the Second Circuit, in ruling on the district court's denial of plaintiff's renewed motion for disqualification, noted that "although the district judge was not bound by our previous decision, we find it puzzling that he chose to ignore the reasoning of that decision and again denied appellant's motion to disqualify." *Cheng v. GAF Corp.,* 713 F.2d 886, 891 (2d Cir.1983), *vacated on other grounds,* 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985); *see also Cheng v. GAF Corp.,*

747 F.2d 97, 98 (2d Cir.1984) (per curiam), *vacated on other grounds,* 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985) (affirming the district court's grant of plaintiff's disqualification motion, which had been renewed a second time).

Based on these decisions, it is abundantly clear that the Second Circuit considers the reasoning of its first *Cheng* opinion to be sound, even though it recognizes, as a procedural matter, the opinion is not binding on the district courts of this circuit.

discussed the case at the firm, and that the firm would not permit him to have any substantive involvement in the case. 631 F.2d at 1057. While accepting the defendant's account of the precautions taken, the court noted that one of the important purposes of disqualification was to "to guard against the danger of inadvertent use of confidential information." *Id.* (quoting *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir.1975), as quoted in *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754 (2d Cir.1975)). Given the relatively small size of the firm (35 overall and 21 in the New York office where the attorney was located) and the circumstance that the firm was still actively pursuing the litigation, the court did not believe that the screening mechanisms in place could safeguard against inadvertent disclosures for the duration of the representation. *Id.* 631 F.2d at 1058; *see also United States Football League,* 605 F.Supp. at 1467–68.

The court further observed that although its decision rested on the clear direction of Disciplinary Rule 5–105(D), the case also presented an unacceptable appearance of impropriety. Recognizing that in *Bd. of Educ. v. Nyquist,* 590 F.2d 1241 (2d Cir. 1979), it had noted that where there is no danger that the underlying trial will be tainted, the appearance of impropriety alone would not justify disqualification, the court in *Cheng* found that despite attempts to screen the attorney, it was still possible that the underlying trial would be tainted by the defendant's inadvertent use of the unfair advantage it had over the plaintiff. *Cheng,* 631 F.2d at 1059. Accordingly, the *Cheng* court held that the case presented both the danger of tainting the underlying trial and the unacceptable appearance of impropriety condemned in Canon 9. *Id.* In concluding that the entire firm should be disqualified under Canons 9, 4 and 5, the court noted that "if there were any doubt as to the propriety of our action, we would

resolve it in favor of disqualification." *Id.; see also Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975); *Papanicolaou v. Chase Manhattan Bank, N.A.,* 720 F.Supp. 1080, 1083 (S.D.N.Y.1989).

The facts here present an even more compelling case for disqualification than those in *Cheng.* First, Ms. Pluchino was directly involved with the representation of defendants at the Bivona firm while the attorney in the *Cheng* case did not personally represent the plaintiff but only participated in discussions with other attorneys about the case. Second, in terms of the potential effectiveness of any "Chinese Wall," Ms. Pluchino's firm is smaller than the firm in the *Cheng* case and the measures taken to insulate her are no more stringent. Moreover, as in *Cheng,* this case is ongoing and accordingly the danger of disclosure continues. Although I do not doubt the veracity of Ms. Pluchino's statements that she has not disclosed confidential information to her new colleagues, I find that in her daily contacts with plaintiffs' counsel there remains a danger of inadvertent disclosure of information she gained while representing the defendants. The obvious appearance of impropriety coupled with a real danger that the forthcoming trial will be tainted require disqualification. *See Cheng,* 631 F.2d at 1057–59; *Yaretsky v. Blum,* 525 F.Supp. 24, 29–30 (S.D.N.Y.1981).

In sum, the reasoning of *Cheng* is persuasive, and plaintiffs have cited no case in this circuit that, under similar circumstances, has held otherwise.[2] The analysis in *Cheng* dictates disqualification in this case.

Accordingly, defendants have established that the Katz firm should be disqualified from representing plaintiffs in this matter.

**B.** *Laches*

██ Plaintiffs nonetheless contend that disqualification is not appropriate in this

---

**2.** Plaintiffs' reliance on *Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir.1980) (en banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), is misplaced. As the court in *Cheng* noted, *Armstrong* rested on a different

provision of the Code of Professional Responsibility and implicated policy considerations not present in the instant case. *See* 625 F.2d at 1058 n. 7.

case because defendants' predecessor counsel became aware, albeit informally, of Ms. Pluchino's employment with the Katz firm in approximately November 1989 and failed to object.

In this circuit, laches is generally not a defense to a motion to disqualify. *See, e.g., Gov't of India v. Cook Indus., Inc.,* 422 F.Supp. 1057, 1059 n. 4 (S.D.N.Y.1976). In *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973), the court, in determining that laches did not bar a motion to disqualify opposing counsel, held that the public interest that was served by disqualification in that case and the court's duty and power to regulate the conduct of attorneys practicing before it in accordance with the rules of professional conduct could not be defeated by the laches of a private party. 478 F.2d at 574.

In this case, the public interest in avoiding the appearance of impropriety in such situations, *see Cheng,* 631 F.2d at 1059; *Yaretsky,* 525 F.Supp. at 30, is sufficient to preclude the application of laches to bar defendants' motion. *Emle,* 478 F.2d at 574. Moreover, although undoubtedly a plaintiff suffers some prejudice whenever his counsel is disqualified on the eve of trial, the prejudice has been, to a great extent, the result of the failure of the Katz firm to formally notify defendants of the potential conflict. Had this been done, the Kanterman firm, based on a review of the files obtained from the Bivona firm would have been in a position to move for disqualification shortly after it was substituted for the Bivona firm on April 30, 1990, and prejudice due to the closeness of the trial of this matter would not have been an issue.

In sum, although application of the laches doctrine might be appropriate in an extraordinary case where it is clear that the disqualification motion was inspired by dilatory tactics, *see, e.g., United States v. Newman,* 534 F.Supp. 1113, 1127 (S.D.N.Y.1982), that is not the situation here.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted and Katz, Katz & Bleifer, P.C. is disqualified from further representation of plaintiffs in this case.

It is further ordered that:

(1) plaintiffs have until March 29, 1991 to secure new counsel and notify the court accordingly;

(2) the parties are to appear at a status conference on April 5, 1991 at 10:30 A.M. the purpose of rescheduling the trial of this matter.

SO ORDERED.