*1000 OPINION OF THE COURT
Joseph Harris, J.
Plaintiff, Trustco Bank New York (Trustco) moves to disqualify Hiscock & Barclay, L. L. P. (Hiscock) from representing Key Bank, N. A. (Key Bank) in this action which seeks $943,654.30 in damages from Key Bank for its alleged failure to comply with applicable sections of the Uniform Commercial Code and Federal Reserve Regulations respecting return of dishonored checks.
FACTS
For some years prior to December 31, 1994, the law firm of Roemer & Featherstonhaugh, P. C. (Roemer) represented plaintiff Trustco on numerous litigation matters, including the instant case, and served as its general counsel. Michael J. Smith, Esq. was a partner in the Roemer law firm during that period and was the principal attorney managing and supervising Trustco’s litigation matters and the lead attorney representing Trustco in the instant action. During his representation, Mr. Smith personally handled or supervised every aspect of this case and spent many hours thereon, both in and out of court. It is undisputed that during this representation he obtained from Trustco numerous confidences and secrets regarding the prosecution of the action and was privy to, and indeed, materially aided in developing Trustco’s trial strategy. He was fully knowledgeable with the strengths and weaknesses of Trustco’s case. While Mr. Smith was managing this case for Trustco, the defendant Key Bank was represented by its longtime counsel, Hiscock & Barclay, L. L. P. In January of 1995, Hiscock began and concluded negotiations to hire Michael Smith as a partner of Hiscock. Mr. Smith commenced his partnership with Hiscock on February 1, 1995. Hiscock requested that Trustco consent to Hiscock’s continued representation of Key Bank in the instant case despite Hiscock’s hiring of Michael Smith and the potential conflict of interest that created. Trustco refused; Hiscock declined to voluntarily withdraw as counsel, and this motion ensued.
THE LAW
The New York Code of Professional Responsibility provides that an attorney may not "represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former *1001 client.” (Code of Professional Responsibility DR 5-108 [A] [1] [22 NYCRR 1200.27].)
An attorney should be disqualified from appearing in litigation on behalf of a party if the attorney formerly represented an opposing party in the same litigation or where the current litigation is either substantially related to the prior litigation or the attorney during his former representation had access to confidential information that is substantially related to the current litigation. (See, Greene v Greene, 47 NY2d 447; Hunkins v Lake Placid Vacation Corp., 120 AD2d 199; Cooke v Laidlaw, Adams & Peck, 126 AD2d 453.)
Thus, a single practitioner who had previously represented a plaintiff in the same litigation or substantially related litigation would be disqualified from thereafter representing the defendant in such litigation. This rule has been extended to provide that if one attorney in a firm is disqualified from representing a client, then all attorneys in the firm are disqualified. (Cardinale v Golinello, 43 NY2d 288.) This is so, said the Court, because there is an irrebuttable presumption (known also as the "rule of attribution”) of shared confidences among attorneys employed by the firm which forecloses the firm from representing others in the future in the same or substantially related matters. (Cardinale v Golinello, supra; see also, Solow v Grace & Co., 83 NY2d 303.)
"The rule fully implements attorneys’ fiduciary duties of loyalty and confidentiality to the client and their ethical obligation to avoid the appearance of impropriety.” (Solow v Grace & Co., supra, at 129.)
In Solow v Grace & Co. (supra), the Court of Appeals carved out an exception to the strict traditional rule of per se disqualification to accommodate, upon the unique circumstances of that case, other policy considerations while still assuring compliance with the policy considerations furthered by the traditional rule.
The additional policy considerations sought to be accommodated within the traditional rule concern the right of clients to select counsel of their choice and the free mobility of attorneys within the legal system. "A per se disqualification rule * * * conflicts with public policies favoring client choice and restricts an attorney’s ability to practice [citations omitted]. While those concerns are not sufficient to override the important ethical considerations which underlie the rule, it is a fact of life that many attorneys in today’s society spend a *1002 substantial portion of their careers with large firms such as Stroock. To attach to those attorneys an irrebuttable presumption that they have knowledge of all the business the firm handled during their employment, and thus are disqualified from later appearing in matters substantially related to any part of it, seriously disadvantages them and the clients who wish to retain them.” (Solow v Grace & Co., supra, at 310.)
What are the factors that gravitated toward the modification of the traditional rule of irrebuttable presumption by the Court of Appeals in Solow (supra)? Comparing its decision in Cardinale v Golinello (43 NY2d 288, supra [holding the presumption of disqualification to be an irrebuttable one]), and the Second Circuit’s decision in Silver Chrysler Plymouth v Chrysler Motors Corp. (518 F2d 751 [involving the law firm of Kelly, Drye & Warren, which, unlike the law firm in Cardinale, was a firm of some 80 lawyers segregated into different departments and holding the presumption of disqualification to be a rebuttable one]), the Court of Appeals stated: "As the decisions suggest, the purposes of the irrebuttable presumption may be satisfied in different ways depending on the nature of the law firm and the character of its practice. In smaller more informal settings the imputation of knowledge as a matter of law is necessary to protect the client and avoid the appearance of impropriety. In other circumstances the risk of conflict is so minimal that the danger of it occurring is outweighed by policy considerations militating against an irrebuttable presumption.” (Solow v Grace & Co., at 310-311.)
The facts that propelled the Court of Appeals decision in Solow (supra) are the following: Prior to its representation of plaintiff Solow, Stroock, Stroock & Lavan, a large departmentalized law firm with 372 attorneys, represented defendant Grace in a substantially related (but not the same) asbestosis lawsuit.[1]
The previous involvement of Stroock on behalf of Grace was through one Barbara Billauer, a former partner of Stroock who came to that law firm in 1986 and left in 1990, two years before Stroock was retained as cocounsel in the Solow case (supra) in 1992. The retention of Stroock was made, on Grace’s behalf, by the Boston law firm of Goodwin, Procter & Hoar, who defended Grace nationally in asbestos matters. Stroock was hired for the limited purpose of preparing one Dr. Seaton, *1003 an independent expert retained by Grace, for deposition and possible testimony. This function was accomplished by Ms. Billauer, assisted by a first-year associate and several paralegals, all of whom, together with Ms. Billauer, had left the Stroock firm prior to its retention by Solow, and consisted solely of drafting a hypothetical direct trial examination of Dr. Seaton and preparing him for trial. This preparation was based exclusively, she said, on her collection and review of public documents on the subject and Dr. Seaton’s medical expertise.[2]
Based upon the foregoing, Stroock maintained that it had factually rebutted any claim that its representation of plaintiff in Solow (supra) would compromise confidences of Grace and that because it had done so it should not be disqualified, and the Court of Appeals agreed.
The traditional per se, irrebuttable presumption, rule of disqualification, was employed "to fully protect client confidences and secrets, to offer a clear test which is easy to administer and to avoid an appearance of impropriety on the part of the attorney or the law firm.” (Solow v Grace & Co., supra, at 308.)
"When an attorney represents a party against a former client the current client’s interest in vigorous representation potentially threatens the former client’s expectation of confidentiality. The rule is designed to free the former client from any apprehension that matters disclosed to an attorney will subsequently be used against it in related litigation * * *
"Finally, the rule provides a test which because of the ease of its application, becomes a strong aid in self enforcement among members of the legal profession.” (Solow v Grace & Co., supra, at 309.)
Lest we be inclined to sing a sad song over the demise of the irrebuttable presumption rule, it is clear that Solow (supra) does not mark the death knell of that rule nor even presage *1004 same. In order for the traditional rule of per se disqualification to be converted from an irrebuttable presumption to a rebuttable one there must be a confluence of three factors: (1) That the involvement of the "tainted” attorney or law firm in the prior representation giving rise to the conflict must have been minuscule; (2) that the "tainted” attorney is no longer connected with the law firm seeking to avoid disqualification; and (3) that the configuration of the law firm seeking to avoid disqualification, and the nature of its work, is such that its attorneys are not so intimately acquainted with all the work in the office that they could be expected to share client confidences and ideas about how to handle client problems as a matter of course (see, Cardinale v Golinello, supra, 43 NY2d, at 292), but large enough and so segregated into departments that it would be reasonable to assume that the attorneys of the firm as a whole would not necessarily become aware of every client of the firm and share in all of the client confidences and secrets which the firm, as a whole, possessed.[3]
There is no evidence that the Court of Appeals in Solow (supra) intended the total demise of the irrebuttable presumption rule, nor even to downgrade it from its preferred status. Solow is a fact-specific case and the specific factors propelling the Court of Appeals to there adopt a rebuttable presumption standard rather than an irrebuttable presumption are those set forth above. Thus the Court of Appeals wrote:
"if Ms. Billauer had attempted to represent plaintiffs in their current action against Grace, she would be disqualified from doing so and the imputation of shared confidences with her partners might be so obvious from the facts that her new firm would also be disqualified as a matter of law (see, Cardinale v Golinello, supra.)
"In this matter, however, Stroock seeks to represent plaintiffs and Ms. Billauer, who handled the Grace matter while at Stroock [City of Enterprise], has moved to another firm. Under these circumstances the ethical considerations which support a per se disqualification rule have considerably less force and may be overridden by competing policy concerns. In this situation the court must presume that the rights of the former client are jeopardized by Stroock’s subsequent representation *1005 of plaintiffs, but Stroock should be allowed to rebut that presumption by facts establishing that the firm’s remaining attorneys possess no confidences or secrets of the former client * * * In firms characterized by the informality exhibited * * * in Cardinale, disqualification will be imposed as a matter of law without a hearing. If the firm can demonstrate prima facie that there is no reasonable possibility that any of its other attorneys acquired confidential information concerning the client, a hearing should be held after which the court may determine that disqualification may be unnecessary. The evidence must be sufficient, however, to establish that the former client’s interests are fully protected and to overcome any suggestion of impropriety.” (Solow v Grace & Co., supra, at 313.)
While Hiscock may satisfy the third factor enumerated above (configuration of the law firm and nature of its work),[4] it cannot satisfy the first two factors. Michael J. Smith is currently a partner with Hiscock, and he possesses confidences and secrets of his prior client Trustco, gleaned not merely from a substantially related case but from the very action at issue. His involvement with this case while his former firm represented plaintiff Trustco was not merely tangential or peripheral, but he was indeed the principal, lead, and responsible counsel with respect to that representation, familiar with and in charge of every phase of the case on behalf of Trustco.
Hiscock proposes to erect a "Chinese Wall” around attorney Smith, insulating him with respect to this case from all the other attorneys in the firms, and them from him. Hiscock has elicited from Mr. Smith an averment that in no way, shape, or form has he discussed this case with any other member of the Hiscock firm after he joined said firm, and a promise that he would not do so in the future. Hiscock has directed all of its attorneys and other personnel that they are in no way to discuss this case with Mr. Smith. Further, this case will be handled exclusively by Hiscock’s Syracuse office and its Albany office, where attorney Smith is employed, will play no part in it whatsoever.
Solow (supra) is in no way approval by the Court of Appeals for the erection of a "Chinese Wall”. On the contrary it opts for full implementation of the irrebuttable presumption-attribution rule while the "tainted” attorney remains with the law firm seeking to avoid disqualification and focuses only on the *1006 attributes of the law firm after the "tainted” attorney has left, only then permitting rebuttal of the permanency of the taint. While Smith remains at Hiscock the appearance of impropriety can be dispelled by no other device but total disqualification. Thus the Court of Appeals states in Solow (supra, at 306), as follows: "In the case before us * * * the attorney who represented Grace in the prior matter, one of 372 attorneys employed by Stroock, left the firm well before it was retained in this litigation. In these circumstances, Stroock contends that the strict enforcement of the irrebuttable presumption rule gives too much weight to those ethical concerns [attorney’s fiduciary duties of loyalty and confidentiality to their clients and their ethical obligation to avoid the appearance of impropriety] and unduly impairs related policy objectives involving the right of clients to select counsel of their choice and favoring the mobility of attorneys. It maintains that it should be able to avoid disqualification by demonstrating that the remaining attorneys have no knowledge of the client’s prior matter; that the client’s confidences and secrets, if any there were, left with the departing partner * * * [W]e conclude Stroock is correct.”
What Hiscock’s proposal for a quarantine, or an impermeable "Chinese Wall” as characterized by them, amounts to, is a total abandonment of the irrebuttable presumption rule and a substitution therefor of a "trust me” rule. This is unacceptable.
The policy considerations that gave rise to the irrebuttable presumption rule in the first place are of an order too important to be safeguarded by a "trust me” rule, however good-intentioned Hiscock may be. These policy considerations, indeed, are the very essence of the attorney-client privilege.
While attorney Smith remains at Hiscock, the maintenance of the "Chinese Wall” would require periodic hearings to assure the wall was not being breached. In effect, what this means is that the parapets of the Chinese Wall would have to be manned by the judiciary, and the judiciary does not have sufficient resources to take on this added duty.
Nor is the impermeability of a Chinese Wall an attainable concept. Even the original "impermeable” Chinese Wall was overrun by the barbarians.
The legal system was not created for the benefit of its practitioners. While the free movement of attorneys through the legal system is a goal to be cherished, it is not the essence *1007 thereof and may have to give way to what in fact is the true essence of the legal system — absolute confidence of litigants in the attorney-client privilege.
As time goes on, as attorneys and other personnel — some more or less transitory — including temporary secretarial help and paralegals — come and go, the initial zeal that is manifested at the commencement of a project has a tendency to turn into inattentiveness, carelessness and inadvertence. These three vices are not a proper foundation upon which to rely to preserve the attorney-client privilege and confidence therein. While attorney Smith remains at Hiscock there is always the reasonable chance that the Chinese Wall may come tumbling down. Even if it does not, to Trustee, the appearance of impropriety is so heightened by the presence of Smith, its former counsel in the camp of the "enemy”, that it can never be dispelled by any other means but disqualification. For these reasons, under the facts of this case the irrebuttable presumption rule must apply and Hiscock must be disqualified from representing Key Bank in the instant action.
This holding ought not to wreak havoc with the policy considerations that gave rise to Solow (supra) — maximization of a party’s freedom of choice of counsel and maximization of an attorney’s mobility through the legal system. Key Bank may still have Hiscock represent it against any bank it wishes except this case or a substantially related case involving Trustee. Solow itself was an attempt to balance competing policy considerations, as is this case. If the shoe were on the other foot, this court cannot conceive that Key Bank would gladly countenance any other result.
As the quantum of involvement of an attorney in the confidences and secrets of a prior client increases, the relative importance of a potential new client’s right to counsel of choice in an adverse matter, and of attorney mobility, decreases in inverse order. Hiscock is an excellent law firm; Michael J. Smith is an honorable man. But everything in life is a series of choices. Hiscock and attorney Smith knew when they joined forces that there was a potential conflict of interest. Nothing in this decision can have come as a surprise to them, although they may have wished for a different result. Hopefully their association with each other will result in other benefits to both of them.
Accordingly, Hiscock is disqualified from representing Key *1008 Bank in the instant action effective from the date of service upon Hiscock of the order to be entered herein. A copy of said order, with notice of entry, shall at the same time be served upon Key Bank, together with a notice that it has 30 days from the date of service of the order to appoint a substitute attorney. No further proceedings may be taken herein by any party without leave of this court for a period of 30 days, after service upon Key Bank of the aforesaid notice, or until appointment by Key Bank of substitute counsel, whichever occurs first.

. City of Enterprise v Grace & Co., Cir Ct, Coffee County, Ala, civ No. 85-87; see also, Solow v Grace & Co., 193 AD2d 459.

. It may be well to note that Ms. Billauer, prior to her coming to Stroock, had been a partner at Anderson, Russell, Kill & Olick from 1982 to 1986, and while there had represented Grace as a defendant in asbestos lawsuits. She stated in affidavits submitted in the Solow case (supra) that the only people at Stroock with whom she might have discussed her prior representation of Grace while at Anderson, Russell were a first-year associate and a paralegal, both of whom had left Stroock prior to its retention on behalf of Grace in 1992. The statements in Ms. Billauer’s affidavits were corroborated by the evidence contained in Stroock’s computerized billing records.

. While the determination of whether the presumption of disqualification is irrebuttable or rebuttable does not rest on the size of the firm or the number of lawyers it employs, those factors are relevant. (Solow v Grace & Co., supra, at 312.)

. Hiscock has 100 lawyers and 7 separate offices.