**DECORA INCORPORATED, Plaintiff,**

v.

**DW WALLCOVERING, INC., David Weinberg, and Gracious Home, Defendants.**

**No. 94 Civ. 8646 (JGK).**

United States District Court, S.D. New York.

Sept. 6, 1995.

Hedman, Gibson & Costigan, P.C. by Thomas M. Gibson, Martin P. Endres, New York City, for plaintiff Decora Incorporated.

Darby & Darby P.C. by Paul Fields, Amy J. Benjamin, New York City, for defendants DW Wallcovering, Inc. and David Weinberg.

## OPINION & ORDER

KOELTL, District Judge.

Plaintiff Decora Incorporated (hereinafter "Decora") alleges in this action that defendants DW Wallcovering, Inc., David Weinberg, and Gracious Home infringed a patent of which Decora is the owner by assignment, United States Letters Patent No. 4,151,319, "METHOD FOR MAKING A PRESSURE SENSITIVE ADHESIVE COATED LAMINATE," issued by the United States Patent and Trademark Office on April 24, 1979 (hereinafter "the '319 patent"). Defendants DW Wallcovering and David Weinberg have alleged as affirmative defenses that they have not infringed the patent and that the patent is invalid or unenforceable. They have also counterclaimed for a declaratory judgment of its invalidity and, alternatively, a declaratory judgment that no practice of theirs is infringing.

The plaintiff now seeks the disqualification of Joseph R. Robinson and the law firm of Darby & Darby P.C. (hereinafter "Darby & Darby"), counsel for defendants DW Wallcovering, Inc. and David Weinberg, on the ground that Mr. Robinson, an associate at Darby & Darby, previously represented the plaintiff in a substantially related matter in which he obtained confidential information belonging to the plaintiff. Prior to his employment at Darby & Darby, Mr. Robinson was employed by the law firm of Hedman, Gibson, Costigan, & Hoare, P.C., the predecessor of Hedman, Gibson & Costigan, P.C. (hereinafter "Hedman, Gibson"), counsel for the plaintiff in this action.

For the reasons stated below, the plaintiff's motion is granted.

### I.

The Court reviewed the submissions of the parties and heard oral argument on March 10, 1995. The Court also heard testimony *in camera* from plaintiff Decora and reviewed allegedly privileged documents submitted by Decora, all of which were offered to show the prior communication of the plaintiff's confidential information to Mr. Robinson. On the basis of the foregoing, the Court finds the following facts.

In April 1990, Decora Incorporated was created when Utilitech Incorporated purchased the Decora Division of United Merchants and Manufacturers, Inc. and established it as a subsidiary named Decora Incorporated, doing business as Decora Manufacturing. In January 1992, Utilitech Incorporated merged into a newly formed holding company named Decora Industries, Inc.

Mr. Robinson was employed at Hedman, Gibson from November, 1987 to August, 1991. In May 1991, the firm was retained by Nathan Hevrony, an officer of Decora and Chairman of the Board and Chief Executive Officer of Utilitech, to give advice regarding patent matters relating to its manufacturing technology, including matters related to the '319 patent owned by Decora, its subsidiary. The "conflict card" circulated within Hedman, Gibson indicates Utilitech was the client on this matter. A new client number was assigned by the firm to Utilitech and all invoices were directed to Hevrony as CEO of Utilitech. However, in the course of this representation, trade secrets belonging to Decora were communicated to attorneys at Hedman, Gibson, including Mr. Robinson.

On May 13, 1991, Edward Hedman, Esq., the senior partner of Hedman, Gibson, asked Mr. Robinson to perform a search to determine, among other things, the patent position held by Decora on the '319 patent. In doing this search, Mr. Robinson examined matters relating to the validity of the patent. In instructing Mr. Robinson on how to conduct the search, Mr. Hedman revealed portions of Decora's confidential trade secrets to him. Mr. Hedman discussed these trade secrets in his *in camera* testimony given in connection with this motion. After conducting the search, Mr. Robinson discussed the results with Mr. Hedman and attorney Thomas M. Gibson. All of these events occurred on May 13, 1991. Mr. Robinson spent one and a quarter hours working on the matter, the bulk of which was spent working directly with Mr. Hedman. Hedman, Gibson billed a total of thirty-four hours to the matter.

Mr. Robinson has no recollection of the plaintiff's confidences that were imparted to him. He does not recollect the one and a

quarter hours of work that he performed. Prior to the time the plaintiff raised the issue in this suit, Mr. Robinson was not aware of having performed any work for the plaintiff. Mr. Robinson's affidavit is consistent with Mr. Hedman's *in camera* testimony, because Mr. Hedman also did not recall the project when the issue initially arose in the current lawsuit. His memory was refreshed only after he retrieved and consulted his notes of his consultation with Mr. Robinson, as he explained in his testimony.

At the outset of this lawsuit, Mr. Robinson spoke with an attorney at Hedman, Gibson to check if there was any conflict. He was told—incorrectly, as explained below—that Decora had only become a client after he left. Mr. Robinson then proceeded to work on the present case, representing the defendants against his former client, Decora.

## II.

Plaintiff Decora alleges that Mr. Robinson's work on May 13, 1991 constitutes work for the plaintiff on a substantially related matter in which confidential information was imparted to him and that disqualification is therefore required.

In this Circuit, a motion to disqualify an attorney is committed to the discretion of the district court. *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980) (collecting cases),[1] *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981).[2] Motions to disqualify are generally viewed with disfavor in this Circuit. *In re Maritima*

*Aragua, S.A.,* 847 F.Supp. 1177, 1179 (S.D.N.Y.1994) (Sweet, J.) (collecting cases); *Huntington v. Great Western Resources, Inc.,* 655 F.Supp. 565, 571 (S.D.N.Y.1987) (Sand, J.) ("The Second Circuit has emphasized in its most recent disqualification opinions that a court's ultimate objective in weighing disqualification questions is to ensure that the balance of presentations in a litigation will not be tainted by improper disclosures.... Courts have been directed to take a 'restrained approach that focuses primarily on preserving the integrity of the trial process.'") (citations omitted). A party seeking disqualification must meet a high standard of proof before disqualification will be granted. *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *Maritima Aragua,* 847 F.Supp. at 1180.

The Court of Appeals for the Second Circuit has recognized that the American Bar Association Code of Professional Responsibility ("the ABA Code") provides appropriate guidelines for attorney behavior. *Evans,* 715 F.2d at 788 (collecting cases). Canon 4 of the ABA Code states that "A Lawyer Should Preserve the Confidences and Secrets of a Client." Judge Weinfeld, addressing a lawyer's duty to preserve client confidences in subsequent representations in the seminal case of *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953), stated that in order for former clients of an attorney to obtain the disqualification of the attorney when the attorney appears in an

---

1. In *Baird v. Hilton Hotel Corp.,* 771 F.Supp. 24, 27 n. 1 (E.D.N.Y.1991), the court noted, "[I]t is abundantly clear that the Second Circuit considers the reasoning of its first *Cheng* opinion to be sound, even though it recognizes, as a procedural matter, the opinion is not binding on the district courts of this circuit."

2. In *Evans v. Artek Sys. Corp.,* 715 F.2d 788 (2d Cir.1983), the Court of Appeals set forth the competing interests that courts attempt to accommodate when deciding motions for disqualification by application of the substantial relationship test described below:
   The objective of the disqualification rule is to "preserve the integrity of the adversary process," *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979). However, while we have not hesitated to disqualify counsel when the circumstances

warranted it, we have also noted that "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to chose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession." *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir. 1978). We have also noted that disqualification motions "are often interposed for tactical reasons," and that "even when made in the best of faith, such motions inevitably cause delay." *Board of Education v. Nyquist, supra,* 590 F.2d at 1246 (2d Cir.1979); *see Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir.1977).
*Evans,* 715 F.2d at 791–92.

adverse position in a subsequent representation:

> (T)he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.

*T.C. Theatre Corp.,* 113 F.Supp. at 268. The Court of Appeals for the Second Circuit has affirmed that *T.C. Theatre Corp.* provides the basis for the approach courts are to take when determining whether an attorney should be disqualified from a matter because of a representation of an adverse party in a related matter. An attorney may be disqualified in such circumstances if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.[3]

*Evans,* 715 F.2d at 791; *see also Cheng,* 631 F.2d at 1055–56; *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 570–71 (2d Cir. 1973). Under this standard, proof of substantial similarity must be "patently clear" to warrant disqualification. *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739–40 (2d Cir.1978); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754–56 (2d Cir.1975), *overruled on other grounds by Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir.1980), *vacated and remanded,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).[4]

In this case, each of the elements of the substantial relationship rule apply to attorney Robinson and require his disqualification.

## III.

■ The defendants challenge the applicability to this case of the first prong of the rule, that the moving party be a former client of the adverse party's counsel. They allege that Robinson did not previously represent Decora, because Nathan Hevrony retained Hedman, Gibson to do the May 1991 patent search on behalf of Utilitech rather than on behalf of Decora, its subsidiary. The defendants rely on cases in which courts have held that an attorney's prior representation of a copyright licensee or patent assignor did not make the copyright licensor or patent assignee a former client of the attorney for purposes of a disqualification motion.[5] These

---

**3.** An attorney's access to privileged information is sufficient to warrant disqualification, because there is a presumption that access to privileged information will be accompanied by actual possession of such information. However, this presumption may be rebutted and disqualification avoided if an attorney can prove that he or she does not possess privileged information. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 756–57 (2d Cir.1975), *overruled on other grounds by Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir.1980), *vacated and remanded,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *Cheng,* 631 F.2d at 1056–57. The rule's provision for disqualification in the absence of proof of actual possession of confidential information is further supported by Canon 9 of the ABA Code which provides that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." However, the appearance of impropriety alone is not sufficient to warrant disqualification. *See Board of Educ. of City of*

New York v. Nyquist, 590 F.2d 1241, 1246–47 (2d Cir.1979).

**4.** The *T.C. Theatre Corp.* test is now codified in DR 5–108 which is applicable in New York. Code of Professional Responsibility DR 5–108.

**5.** *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1336 (Fed.Cir.1988) (denying motion to disqualify attorneys who prosecuted patent that their current client sought to invalidate where patent had been assigned to a third party, because "the assignment of a patent does not transfer an attorney-client relationship"); *Alchemy II, Inc. v. Yes! Entertainment Corp.,* 844 F.Supp. 560, 564 (C.D.Cal.1994) (holding that counsel who had previously represented copyright licensee in defense of its rights against third parties was not to be deemed to have formerly represented licensor and was therefore not subject to disqualification in suit in which attorney represented a party adverse to the licensor).

cases are inapposite, because there is not the same identity of interests between copyright licensors and licensees or patent assignors and assignees as there is between parent corporations and their subsidiaries.

In *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 798 F.Supp. 612 (C.D.Cal.1992), the court rejected the argument that the relationship between a parent corporation and its subsidiary was insufficient on a disqualification motion for the subsidiary to be considered the former client of an attorney who had previously represented the parent corporation. The facts of the patent infringement action were similar to the facts of this case. A company, American Hospital Supply Corporation ("AHS"), had previously retained the law firm whose disqualification was sought to examine the validity of several patents. The validity of one of them was at issue in the subsequent infringement action. Prior to the case, AHS merged with another company and became Baxter International, which was the parent corporation of the plaintiff in the infringement action, Baxter Diagnostics. The court rejected the argument that the law firm had not previously represented Baxter Diagnostics, the plaintiff in the infringement action, on the ground that to accept the argument would be to exalt form over substance. *Baxter*, 798 F.Supp. at 615–16.[6] Similarly, in *Maritima Aragua*, the court found that a party presented valid grounds to disqualify an attorney who had previously represented a non-party where the prior client's interests were affected by the suit although the prior client was not a party. *Maritima Aragua*, 847 F.Supp. at 1182 (citing *Don King Prods., Inc. v. Harlow*,

No. 88 Civ. 1088, 1988 WL 112896 (S.D.N.Y. Oct. 18, 1988)).

In Hedman, Gibson's prior representation of Utilitech, Decora's trade secrets were actually communicated to Hedman, Gibson and some also to Mr. Robinson. Therefore, there was an "attorney-client relationship" under the substantial relationship disqualification rule between Mr. Robinson and Decora, Utilitech's subsidiary.

## IV.

■ The Court held an *ex parte in camera* hearing to allow the plaintiff to use privileged material to show the substantial relationship between the present dispute and the matter on which Mr. Robinson worked on May 13, 1991 and to show that actual confidences of Decora were communicated to him. The defendants have challenged the propriety of such a hearing.[7]

In *Government of India*, the Court of Appeals for the Second Circuit upheld the district court's disqualification of an attorney under the substantial relationship test. Judge Mansfield wrote a concurrence for the purpose of noting his disagreement with the district court's failure to recognize that under *Silver Chrysler* the presumption of communication of client confidences implicit in the substantial relationship test is rebuttable. He observed that in some circumstances, an attorney's effort to rebut the presumption may endanger the confidentiality of information belonging to the former client, but concluded that allowing for such rebuttal was nonetheless within the discretion of a district

6. *See also Emle Industries*, 478 F.2d 562 (affirming disqualification of plaintiffs' attorney who had previously represented part owner of corporate defendant in case involving identical issue); *Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 539–540 (S.D.N.Y. 1989) (Walker, J.) (finding on a motion to disqualify that plaintiff's law firm who represented defendant corporation's subsidiary in prior representation would be deemed to have previously represented the defendant parent corporation); *Morton–Norwich Products, Inc. v. Int'l Salt Co.*, 195 U.S.P.Q. 641, 643, 1977 WL 22725 (N.D.N.Y.1977) (holding on a motion to disqualify that where prior representation by allegedly disqualified attorney was of present defendant's outside counsel, rather than of the defendant

itself, disqualification was nonetheless warranted, because confidences of the defendant were revealed to the attorney and because the presence of the attorney intermediary could not shield the lawyer from disqualification).

7. The defendants objection constitutes a complete reversal of their prior position on this issue. At the deposition of Mr. Hedman, defendants' counsel requested of plaintiff's counsel, "Counsel, with respect to all the privileged documents that you haven't produced and the ones that you have masked materials in, I would request you bring them to the hearing on this matter.... In case the judge at my request reviews them *in camera.*" Hedman Dep. at 42.

court, because, "I am confident that in such rather rare cases the court will devise appropriate means, including the use of *in camera* or other protective devices, to safeguard the interests of the former client." *Government of India,* 569 F.2d at 741 (Mansfield, J., concurring). In the present case, the Court held an *in camera* proceeding to allow the plaintiff to establish the issues of substantial relation and the actual disclosure of confidences, because the presentation of relevant details necessarily involved the disclosure of client confidences. The former client should not have to disclose such confidences to an adversary as the price of obtaining disqualification.

In *United States Football League v. National Football League,* 605 F.Supp. 1448 (S.D.N.Y.1985), Judge Leisure permitted the submission of proof aimed at rebutting the presumption of shared confidences that arises when the requirements of the substantial relationship test are fulfilled. To protect the disclosure of any confidences, he issued a confidentiality order with the consent of the parties directing that all submissions of such evidence be filed under seal, and he reviewed the submissions *in camera. USFL,* 605 F.Supp. at 1462. *See also Rogers v. Pittston Co.,* 800 F.Supp. 350, 355 (W.D.Va.1992) (holding that *in camera* submission of documents was proper on a disqualification motion, although the opposing party was deprived of an opportunity to respond to them: "[B]ecause the moving party is not required to publicly reveal actual confidences, *in camera* submission of documents is a recognized way of establishing that the two matters are substantially related.") (citations omitted), *aff'd,* 996 F.2d 1212 (4th Cir.1993); *United States v. Uzzi,* 549 F.Supp. 979, 982 (S.D.N.Y.1982) (Sand, J.) (refusing to consider *in camera* testimony on a motion to disqualify only because all of the relevant facts were undisputed).

■ In sum, although a party seeking disqualification of an attorney on the basis of the substantial relationship test is not re-

quired to present evidence that the attorney possesses actual confidences as a result of the prior representation, the Court has discretion to consider evidence proving either that confidences were or were not communicated in the prior representation and to do so in a manner designed to protect confidential evidence from disclosure. Here, the plaintiff understandably sought to make a showing that confidences were actually communicated, in view of the defendants' argument that since time records reflected only one and a quarter hours of work by Mr. Robinson on the prior representation, he could not reasonably have gained confidential information in that time. Such evidence of disclosure of actual confidences may be presented *ex parte* in order to prevent further disclosure, and in weighing it a court will take into account the inability of the opposition to challenge it. Here, it was necessary for the plaintiff to present evidence of the communication of its confidences to Mr. Robinson *ex parte* in order to protect the confidences. In weighing this evidence, the Court has taken into consideration the fact that it was presented *ex parte* and has therefore scrutinized it with great care.

## V.

■ Having received *ex parte* documents and testimony from Charles Hedman, the senior partner of Hedman, Gibson who gave Mr. Robinson the May 13, 1991 assignment, the Court concludes that there was a substantial relationship between the matter worked on by Mr. Robinson on that date and the matter currently in dispute.[8] The prior matter related to the validity of the '319 patent which is directly at issue in this case. The related nature of the matters is sufficient to raise the presumption that Mr. Robinson gained confidential information that would require his disqualification in this matter. Moreover, the Court finds, on the basis of the evidence presented at the *ex parte* hearing, that confidential information related to the '319 patent owned by Decora was actually communicated to Mr. Robinson.

**8.** Due to the confidential nature of the relationship between the prior representation and this one, this Opinion does not address the relationship in detail. *See USFL,* 605 F.Supp. at 1451

(discussing facts of the case in general terms on motion to disqualify so as to protect confidentiality of evidence presented *in camera* ).

Mr. Hedman testified clearly and persuasively on this issue. While he had not initially recalled the conference with Mr. Robinson or the nature of the information communicated to him, after his memory was refreshed by his own notes, he did recall the trade secret nature of the information he received from the client and discussed with Mr. Robinson.

## VI.

■■■■ Having found that Mr. Robinson must be disqualified from the present representation, the issue remains whether the law firm of Darby & Darby, with which he is presently associated, must also be disqualified. Disciplinary Rule 5–105(D) provides: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employ-

ment." [9] In *Cheng*, the Court of Appeals for the Second Circuit observed that, "Anticipating difficulties caused by a strict application of Disciplinary Rule 5–105(D), law firms have employed various methods of screening a possibly tainted attorney from the rest of the firm's involvement in a particular case." *Cheng*, 631 F.2d at 1057. While screening devices may be used in some circumstances to prevent the disclosure of confidences and secrets from a prior representation,[10] thus allowing a law firm to avoid disqualification, they cannot be used where the circumstances are such that the court cannot determine that they will effectively prevent disclosure. In *Cheng*, the Court of Appeals concluded, "Although we do not question [the disqualified lawyer's] integrity or his sincere efforts to disassociate himself from the *Cheng* case, we are not satisfied that under the facts of this

9. Similarly, DR 5–105(D) of the Lawyer's Code of Professional Responsibility adopted by the New York State Bar Association provides, "While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so under DR 5–101(A), DR 5–105(A), (B), or (C), DR 5–108 [Conflict of Interest—Former Client], or DR 9–101(B) except as otherwise provided therein." DR 5–105(D), Lawyer's Code of Professional Responsibility (1990).

10. Disciplinary Rule 5–105(D) constitutes a presumption that client confidences are communicated among the attorneys within a law firm. This presumption may be rebutted in individual cases when appropriate and effective screening measures are instituted to prevent the dissemination of confidences by a disqualified attorney. *See Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224–26 (6th Cir.1988); *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983); *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 257–59 (7th Cir.1983); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1086–87 (S.D.N.Y.1989) (Patterson, J.) (collecting cases); *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 572 (S.D.N.Y. 1987) (Sand, J.); *Yaretsky v. Blum*, 525 F.Supp. 24, 29–30 (S.D.N.Y.1981); *see also American Law Institute Restatement (Third) of the Law Governing Lawyers* § 204, Comment (b), Tentative Draft No. 4 (April 10, 1991) ("Although warranted in many instances, imputation creates burdens both for clients and lawyers. Imputation means that a client who wishes to be represented by a trusted or highly recommended lawyer may not retain that lawyer as counsel. Imputation may prohibit literally hundreds of lawyers in several cities from acting even though only one of their number is personally prohibited from acting. Concern about prospective imputed prohibition may inhibit mobility of lawyers from one firm or employer to another. It therefore is important that imputation not inappropriately inhibit the mobility of lawyers. The burden of prohibition should end when material risks to confidentiality and loyalty resulting from shared income and access to information have been avoided by appropriate measures."). *But see Trustco Bank New York v. Melino*, 164 Misc.2d 999, 625 N.Y.S.2d 803, 806–07 (Sup.Ct., Albany Co. 1995) (Harris, J.) (disallowing screening and interpreting *Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 632 N.E.2d 437, 610 N.Y.S.2d 128 (1994) as holding that, "In order for the traditional rule of per se disqualification to be converted from an irrebuttable presumption to a rebuttable one there must be a confluence of three factors: (1) That the involvement of the 'tainted' attorney or law firm in the prior representation giving rise to the conflict must have been minuscule; (2) that the 'tainted' attorney is no longer connected with the law firm seeking to avoid disqualification; and (3) that the configuration of the law firm seeking to avoid disqualification, and the nature of its work, is such that its attorneys are not so intimately acquainted with all the work in the office that they could be expected to share client confidences and ideas about how to handle client problems as a matter of course, but large enough and so segregated into departments that it would be reasonable to assume that the attorneys of the firm as a whole would not necessarily become aware of every client of the firm and share in all of the client confidences and secrets which the firm, as a whole, possessed.") (citation and footnote omitted).

case the screening will be effective, thus we look to Disciplinary Rule 5–105(D) and order the district court to disqualify [his] firm." *Cheng*, 631 F.2d at 1058 (citations omitted). In this case, Mr. Robinson—while he possessed confidential information belonging to Decora—worked for Darby & Darby against Decora, his former client. Counsel for the defendants represent that after the disqualification motion was filed Mr. Robinson was screened from all communications relating to this case. In the circumstances of this case, under the factors relied upon in *Cheng*, those measures were plainly too little, too late.

In *Cheng*, the Court of Appeals reversed the District Court's failure to disqualify a law firm which had hired a disqualified attorney and sought to screen him from working on the litigation, which was against a client of the legal services organization which had previously employed him. The disqualified attorney was a member of a firm of thirty-five attorneys, approximately twenty-one of whom worked in his office. The attorney worked in the health law division of the firm and the representation at issue was being handled by the firm's labor division. The firm submitted affidavits stating that the attorney had not worked on the case, that he had not disclosed any confidences or discussed the merits of the case, and that he would not be allowed to have any substantive involvement in it. The Court of Appeals nevertheless held:

> Although [the disqualified attorney] may not be personally involved in the Cheng defense, he is a member of a relatively small firm. The matter involved in his prior exposure to Cheng while at LSEP [Cheng's counsel] is still being actively pursued by attorneys for GAF at [the disqualified lawyer's firm]. Despite the ... firm's protestations, it is unclear to us how disclosures, admittedly inadvertent, can be prevented throughout the course of this representation. Unlike many disqualification motions that appear before this Court, here there exists a continuing danger that [the disqualified attorney] may unintentionally transmit information he gained through his prior association with Cheng

during his day-to-day contact with defense counsel.

*Cheng*, 631 F.2d at 1058 (citations omitted).

Darby & Darby is a firm of approximately forty-four attorneys. However, the fact that the office in which Mr. Darby works is slightly larger than that in *Cheng* is more than counterbalanced by the fact that Mr. Robinson does not work in a department separate from the one handling this case and has in fact worked on the case himself, being one of a few attorneys in the firm specializing in matters requiring chemical expertise. Moreover, it is undisputed that the senior lawyer in the case regularly works with Mr. Robinson, relying on him for chemical expertise. Thus, there is a substantial possibility that inadvertent disclosures of Decora's secrets will occur in the course of professional discussions. In this case, the danger of unintentional transmission of confidences gained by the disqualified attorney in the prior representation is even greater than it was in *Cheng*.

In *Cheng*, the Court of Appeals carefully distinguished its decision in *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir.1980), *vacated for lack of appellate jurisdiction*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). In *Armstrong*, the court approved the use of screening to prevent a disqualified lawyer from disclosing confidential information to others in his firm where the lawyer was disqualified due to having had substantial responsibility in the matter at the SEC. The *Cheng* court observed that in *Armstrong* the attorney was disqualified under Disciplinary Rule 9–101(B), which forbids a government lawyer from accepting employment in a matter in which he or she had substantial responsibility while a public employee, whereas in *Cheng* the lawyer was disqualified under Canon 4, which is aimed at protecting client confidences. The Court found this difference significant, because a unique policy interest underlay the decision in *Armstrong*—"'that to disallow screening in all cases involving government attorneys might hamper the government's efforts to hire qualified attorneys.'" *Cheng*, 631 F.2d at 1058 n. 7 (quoting *Armstrong*, 625 F.2d at 443). The court also observed that in *Armstrong* there was

no threat of a taint of the underlying trial if the firm was not disqualified, whereas in *Cheng* such a threat existed, and that the burden on the client of the disqualified firm was less in *Cheng*, than in *Armstrong*. *Id.* Lastly, the court distinguished *Armstrong* on the basis that Armstrong's former employer, the SEC, consented to the firm's representation provided proper screening was employed. *Id.* In this case, as in *Cheng*, there is no issue of prior government employment, there is a risk of tainting the trial process, and the prior client most definitely does not consent.

■ Moreover, given the *Cheng* court's careful scrutiny of the effectiveness of screening procedures and its finding that screening devices whose impenetrability is subject to doubt are inadequate, a screening device implemented only after a disqualified lawyer has worked on a case will not usually provide adequate protection of confidences. *See Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 831 (Fed.Cir.1988) (holding that presumption of shared confidences was not overcome by screening where there was a complete lack of evidence that screening measures were taken at time of disqualified attorney's move to the firm); *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1462 (Fed.Cir.1984) ("[I]t was permissible for her [the district court judge] to hold that the screening arrangement must be set up 'when the potentially disqualifying event occurred' and the new firm knows (or must have been aware) of the problem ...."); *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 259 (7th Cir.1983) (holding that the district court did not abuse its discretion in granting disqualification, because, among other reasons, "[S]creening arrangements were not established until the disqualification motion was filed in August 1981.... [N]o specific institutional mechanisms were in place to insure that information was not shared, even if inadvertently, between the months of February and August."); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1087 (S.D.N.Y.1989) (Patterson, J.) ("This Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict.") (citations omitted); *USFL*, 605

F.Supp. at 1467 (disqualifying law firm, because of evidence "indicating that confidences about the USFL may well have passed within the firm before [the firm] instituted its screen").

■ The need for screening measures to be instituted from at least the outset of litigation is not lessened by the fact that a disqualified attorney is unable to recall the matters that required the attorney's disqualification. In *United States v. Uzzi*, the Court held:

> Nor are we willing to mitigate the harsh rule of law firm disqualification upon the attorney's invocation of a memory lapse. Our unwillingness does not stem from any mistrust of the integrity of the attorneys in this case. Rather, we are of the view that where the former client's secrets and confidences are threatened, the former client is entitled to the prophylactic protection of law firm disqualification and should not be forced to accept the assurances of the attorney that he has forgotten all secrets and confidences.

*Uzzi*, 549 F.Supp. at 984.

As in *Cheng*, the relatively small size of Darby & Darby and the close working relationship between Mr. Robinson and those who are otherwise working on this case against Mr. Robinson's former client indicate that screening mechanisms cannot be effective in this case. The fact that screening measures were not instituted from the outset of this litigation raises further doubts as to their sufficiency. Disqualification of Darby & Darby is therefore necessary. As the court found in *Cheng*, "[i]f after considering all of the precautions taken by the [firm whose disqualification is sought] this Court still harbors doubts as to the sufficiency of these preventive measures, then we can hardly expect [the former client] or members of the public to consider the attempted quarantine to be impenetrable." *Cheng*, 631 F.2d at 1058.

The circumstances that may lead courts to be particularly wary of disqualifying a law firm are not present in this case. The defendants will not lose the benefit of "longtime

142

counsel's specialized knowledge of its operations." *See Gov't of India*, 569 F.2d at 739.[11] Nor will the defendants incur an unduly burdensome "loss of time and money in being compelled to retain new counsel who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation," because the plaintiff moved for disqualification at the outset of this litigation. *See Id.* This disqualification motion was not interposed as a tactic to cause delay and the defendants' right to choose counsel will not be unduly infringed by disqualification. *See Evans*, 715 F.2d at 791–92. *Cf. Uzzi*, 549 F.Supp. 979 (disallowing screening defense on account of the potential sensitivity of the information communicated to the disqualified lawyer, the smallness of the disqualified firm, and the fact that the firm had not yet begun to represent its client in a substantial way). In this case, the plaintiff's disqualification motion has delayed its ability to proceed with the prosecution of its own case. It has not been used as a delaying tactic. And, it is plain that the defendants will be able to turn to other law firms with patent expertise to represent them in this litigation.

For the foregoing reasons, the plaintiff's motion to disqualify Joseph R. Robinson and the law firm of Darby & Darby, P.C. is granted.

**SO ORDERED.**

---

11. In their responses to the Plaintiff's First Set of Requests for Admissions, defendants DW Wallcovering, Inc. and David Weinberg admitted that Darby & Darby did not represent them in any matter prior to January 1, 1995, that it does not currently represent them in any matter other than the present lawsuit, and that they have retained law firms other than Darby & Darby to provide legal advice in trademark matters.